IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


BRENDA M. IRWIN,

                    Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                  Defendant.

No. CV-10-545-HZ

OPINION AND ORDER


Bruce W. Brewer
LAW OFFICES OF BRUCE W. BREWER, PC
419 Fifth Street
Oregon City, OR 97045

      Attorney for Plaintiff

Adrian L. Brown
U.S. ATTORNEY'S OFFICE
District of Oregon
1000 S.W. Third Avenue, Suite 600

Portland, OR 97204

David J. Burdett
SOCIAL SECURITY ADMINISTRATION
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

       Attorneys for Defendant

HERNANDEZ, District Judge:

       Claimant, Brenda M. Irwin ("Irwin" or "Plaintifff"), brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 423 and 416, respectively. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED.

## PROCEDURAL BACKGROUND

       Plaintiff was previously found disabled with ankylosing spondtylitis, having an onset date of February 28, 1993, and an entitlement date of October 1995. R. at 1041. Plaintiff's benefits were ceased in March 2000. R. at 1152. On March 30, 2001, Plaintiff protectively reapplied for Title II disability insurance benefits and Title XVI Supplemental Security Income ("SSI"), alleging an onset date of September 1, 2000. R. at 1034. Her application was denied, and a hearing before an administrative law judge ("ALJ") of the Social Security Administration ("SSA") was held on February 2, 2004. R. at 978. On July 27, 2004, the ALJ found Plaintiff was not disabled, and the Appeals Council denied her request for review on January 26, 2005. R. at 1088-1105. Plaintiff filed a civil action in the United States District Court for the District of

Oregon.  On November 16, 2006, the Honorable Ancer L. Haggerty reversed and remanded the ALJ's final decision.  R. at 1106-07.

On remand, the ALJ issued a fifty-eight page decision finding Plaintiff not disabled on May 2, 2008.  R. at 1028-87.  Although Plaintiff filed exceptions to the ALJ's decision, the Appeals Council declined to assume jurisdiction.  R. at 1021-23, 1785-1803.  Plaintiff filed this action on May 13, 2010, seeking judicial review of the ALJ's May 2, 2008, decision.

## FACTUAL BACKGROUND

The parties are familiar with the medical and other evidence of the record, which spans over 1,800 pages.  I will not, therefore, repeat the evidence except as necessary to explain my decision.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Disability claims are evaluated according to a five-step procedure.  See Valentine v. Commissioner, 574 F.3d 685, 689 (9th Cir. 2009).  The claimant bears the ultimate burden of proving disability.  Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of

impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If so, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. R. at 1034, Finding 2. At step two, the ALJ found Plaintiff had the following severe impairments:

> [F]ibromyalgia; mild degenerative changes of the spine; a history of positive HLA-827 antigen for ankylosing spondylitis without corroborative objective evidence of more than mild abnormality upon imaging studies; possible psoriatic arthritis; carpal tunnel syndrome; right wrist ligament and cartilage tear status-post surgery; dysthymia; anxiety disorder; and personality disorder . . . .

4 - OPINION AND ORDER

R. at 1034, Finding 3.

At step three, the ALJ found Plaintiff's impairments did not meet or equal the

requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at

1036, Finding 4.

At step four, the ALJ found Plaintiff had the following RFC:

[T]he claimant has the residual functional capacity to perform light work as defined
in 20 CFR 404.1567(b) and 416.967(b) except that her capacities for lifting, carrying,
pushing, and pulling are limited to the sedentary level and her mental capacity is
restricted by a slight limitation of her ability to interact appropriately with
supervisors, coworkers, and the general public and a moderate limitation of her
ability to respond appropriately to work pressures in a usual work setting and changes
in a routine work setting . . . .

R. at 1037, Finding 5.

At step five, the ALJ found Plaintiff not disabled because she could perform the

occupations of: (1) an information clerk, Dictionary of Occupational Titles ("DOT") #237.367-

022; (2) a surveillance system monitor, DOT# 379.367-010; and a security guard, DOT#

372.667-034.  R. at 1086.

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards

and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879

F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).  The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986).

"Where the evidence as a whole can support either a grant or a denial, [a court] may not

substitute [its] judgment for the ALJ's."  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)

(citation omitted).

The initial burden of proof rests upon the claimant to establish disability.  Howard, 782

F.2d at 1486.  To meet this burden, the claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected . . . to last for a continuous period of not less than 12 months.

. . ."  42 U.S.C. § 423(d)(1)(A).

## DISCUSSION

Plaintiff contends the ALJ (1) failed to comply with Judge Haggerty's remand order; (2)

improperly relied on extra-record evidence; (3) failed to include all of the limitations set forth in

the opinions of Plaintiff's treating and examining physicians and those set forth in Plaintiff's own

testimony; (4) failed to determine whether Plaintiff met Listing 14.09D; and (5) failed to include

all of Plaintiff's functional limitations in formulating the hypothetical posed to the vocational

expert ("VE").  I address Plaintiff's arguments in turn.

**I. Compliance with Judge Haggerty's Remand Order**

Plaintiff asserts the ALJ failed to comply with Judge Haggerty's remand order.  On

September 15, 2006, Judge Haggerty adopted a stipulated proposed order reversing and

remanding the ALJ's July 27, 2004, decision.  See R. at 1106-07.  The order provided, in relevant

part:

> Upon remand, the ALJ will further develop the record and conduct a de novo
> hearing, at which further evidence will be obtained as to the effects of Plaintiffs
> limitations.  The ALJ will re-evaluate the opinions of Drs. Dryland, Chatroux and
> Grant, giving weight to each of the exertional and non-exertional limitations they

6 - OPINION AND ORDER

> assessed.  The ALJ will re-evaluate Plaintiff's credibility, considering each of her limitations, and further evaluating her daily activities, and come to a new determination of her residual functional capacity.  The ALJ will make a new determination as to Plaintiffs disability taking all evidence into account, and issue a new decision.

Id.

A Commissioner's deviation from a district court's remand order is reversible error.  E.g., Sullivan v. Hudson, 490 U.S. 877, 885–86 (1989).  Contrary to Plaintiff's assertion, the ALJ evaluated the opinions of Drs. Dryland, Chatroux, and Grant, and found they were not "entitled to significant evidentiary weight."  See R. at 1044-45, 1058, 1066.  In addition, the ALJ stated his reasons for discounting each of the doctors's opinions.  See R. at 1044-66.  Based on the record, I find that the ALJ complied with Judge Haggerty's September 15, 2006, remand order.

## II. ALJ's Reliance on Extra-Record Evidence

Plaintiff asserts the ALJ relied on extra-record evidence thereby violating the doctrine of res judicata and her due process rights.  See Tr. 1038-42.  The Commissioner concedes that the ALJ considered extra-record evidence, but contends that the error was harmless.

"[E]xtra-record discovery is not appropriate when the court's jurisdiction is to review the administrative record only."  E.g., Haseltine v. Astrue, 668 F. Supp. 2d 1232, 1233 (N.D. Cal. 2009).  Here, the ALJ explicitly relied on extra-record evidence of Dr. Webb and Dr. Ahsan when discounting Dr. Grant's June 7, 2001, medical opinion.  Specifically, the ALJ found:

> Dr. Grant's opinions that the claimant was unable to engage in more than occasional handling and fingering and only "at least two hours" of standing and/or walking in an eight-hour period are not found to be supported by appropriate clinical findings documenting the existence of an impairment that could reasonably be expected to produce such limitations. . . . [M]oreover, his opinions regarding the claimant's capacities for standing, walking, handling, and fingering based upon his isolated evaluation are inconsistent with and outweighed by the clinical observations of Dr.

Ahsan, a treating source, and Dr. Webb, a treating source with expertise in the field of orthopedic surgery.

R. at 1044-45. (Emphasis added).

Although mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless error, <u>Stout v. Commissioner, Social Security Administration</u>, 454 F.3d 1050, 1055 (9th Cir. 2006), the ALJ's reliance on extra-record evidence here clearly played a role in his assessment of Dr. Grant's opinions, and in turn, his ultimate disability finding.  <u>See</u> R. at 1044-45.  Thus, the ALJ's mistake here is not harmless error.

**III. Plaintiff's Credibility**

Plaintiff contends the ALJ erred by rejecting Plaintiff's testimony.  The Commissioner responds that substantial evidence exists in the record showing Plaintiff was malingering.

The ALJ is responsible for determining credibility.  <u>Vasquez v. Astrue</u>, 572 F.3d 586, 591 (9th Cir. 2009).  Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering.  <u>Carmickle v. Comm'r of Soc. Sec. Admin</u>, 533 F.3d 1155, 1160 (9th Cir. 2008).

When determining the credibility of a Plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the Plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence.  <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may also consider objective medical evidence in determining a claimant's credibility regarding subjective symptom testimony, as long as the ALJ does not reject such testimony solely because

it is unsubstantiated by objective medical evidence.  20 C.F.R. § 416.929(c); see also Rollins v.

Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).

The Commissioner relies on portions of medical notes by various doctors for the

proposition that Plaintiff over-exaggerated her complaints of pain.  For example, the

Commissioner relies on Dr. Grant's June 7, 2001, medical notes stating Plaintiff had "over

dramatized pain behavior."  R. at 355.  He also points to a statement by Marguerite Smith

("Smith"), a nurse practitioner, documenting that Plaintiff "over-exaggerated" her pain

complaints.  R. at 411.  The Commissioner, however, cites no authority, and I find none, standing

for the proposition that "over-dramatization" or "over-exaggeration" amounts to malingering.

Moreover, the record shows that neither Dr. Grant nor Smith opined Plaintiff was malingering.

Rather, Dr. Grant documented that Plaintiff's over-dramatized behavior "may be part of a more

generalized fibromyalgia syndrome," and Smith was of the opinion that Plaintiff's over-

exaggeration was "secondary to her multiple psychiatric diagnoses [of posttraumatic stress

syndrome and severe depression]."  R. at 355, 411.

The ALJ also found Plaintiff's testimony was not credible because her reports to Dr.

Carlini of intense headaches with visual disturbances were "uncorroborated by remotely similar

reports to any treating medical source and [were] contradicted by the absence of any indication of

medical treatment for headaches or emergency room intervention for acute symptomatology."  R.

at 417, 1051.  I find that this is not a clear and convincing reason to reject Plaintiff's statements,

especially where no doctor of record found her to be malingering.

The Commissioner asserts that Plaintiff's reports of chronic pain are uncorroborated by

objective medical evidence.  However, after a claimant establishes an impairment, as Plaintiff

9 - OPINION AND ORDER

does here, the ALJ may not make a negative credibility finding solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ also found Plaintiff's testimony was not credible because Plaintiff reported to Dr. Dryland on November 26, 2001, that she was experiencing pain "all over," but was described as "appearing to be in no acute distress; coordination, deep tendon reflexes, and sensation were intact; mood was within normal limits; memory was intact; and she was fully alert and oriented." R. at 1050.  Plaintiff's complaints of pain, however, are consistent with the symptoms of fibromyalgia, which Dr. Dryland diagnosed Plaintiff as having and which the ALJ himself found to be a severe impairment.  See Coleman v. Astrue, No. 10–35286, 2011 WL 1058448, at *1 (9th Cir. 2011) (stating that fibromyalgia is a disease "that eludes objective measurement"); see also Rollins, 261 F.3d at 855 (stating a principal symptom of fibromyalgia is "pain all over") (internal quotations and citations omitted).

The ALJ also suggests that Plaintiff is not credible because she was motivated by her desire to receive Social Security benefits.  See R. at 1049.  "Obviously, every social security claimant is motivated to some degree by the prospect of gain, so an adverse credibility finding must rest on more than the mere fact that a claimant is pursuing a claim." Hatgy v. Comm'r of Soc. Sec. Admin., No. CIV. 99-6052-JO, 2000 WL 140467, at *5 n.4 (D. Or. 2000).  Here, the Commissioner relies on a note by Plaintiff's counselor at Jackson County Mental Health ("JCMH") on November 2, 2011, stating that Plaintiff "appear[ed] invested in being 'sick' as evidence by her reluctance to consider [c]hanges in her [diagnosis] that reflect current depression versus PTSD-Acute." R. at 1394.  Aside from this one-time comment, no other treating or

examining physician observed Plaintiff as having a possible motivation from secondary gain. This isolated and brief notation by one counselor in a record spanning approximately ten years and encompassing over 1,800 pages does not amount to a clear and convincing reason.

The ALJ also found that Plaintiff made "manipulative attempts to control the content of her medical records." R. at 1056, 1061. The ALJ cites Dr. Morrison's May 12, 2004, medical notes documenting that Plaintiff called and was "'angry about a perceived discrepancy' in his chart notes and that 'she want[ed] documentation stating [that her] knee problem occurred as a result of [a] motor vehicle accident.'" R. at 1061. The ALJ also relies on Dr. Chatroux's July 17, 2003, notes stating that Plaintiff "presented in an angry state blaming her for failing to report evidence of ankylosing spondylitis upon imaging studies . . . ." R. at 1056. A review of the record, however, shows that Plaintiff's knee problem was likely associated with a motor vehicle accident in which she was involved on October 16, 2003. In fact, an x-ray from Plaintiff's emergency room visit immediately following her October 16, 2003, motor vehicle accident showed an "occult tibial plateau fracture" on her right knee. R. at 767, 1036. Furthermore, a careful reading of Dr. Chatroux's July 17, 2003, medical notes reveals Dr. Chatroux did not know what Plaintiff was angry about. See R. at 728 (Dr. Chatroux stated, "[I]t seemed like [Plaintiff] was kind of angry about something . . . .").

The ALJ also found that Plaintiff's decision to "file another application for Social Security disability benefits was motivated by situational and financial factors." R. at 1045. He cites "a chart note from JCMH dated June 7, 2001, reflect[ing] that the claimant presented 'upset regarding life circumstances' and . . . dissatisf[ied] with the fact that she was forced to live with her parents due to financial constraints, a factor that likely influenced her decision to apply for

Social Security disability benefits three months earlier." R. at 705. He also relies on a treatment note from Dr. Chatroux dated June 14, 2001, noting Plaintiff "did not like living with her parents and reported 'stress and depression in her life and just a bleak outlook in general.'" R. at 1045. The ALJ's reasons are not clear and convincing. "[A]n ALJ may not find a claimant not credible simply because she applies for financial assistance; monetary compensation is the purpose of disability benefits." McCorduck v. Astrue, Civ. No. 08-6022-CL, 2009 WL 783354, at *5 (D. Or. 2009) (citation omitted). Furthermore, when read in context, Dr. Chatroux's medical notes show that her comments relate to her diagnosis of Plaintiff's depression, not Plaintiff's alleged motivation to obtain social security benefits. See R. at 514.

The ALJ also found that Plaintiff's "portrayal of her motor vehicle accident to Dr. Chatroux constitute[d] another example of exaggeration likely motivated by the possibility of eventual financial gain." R. at 1066. The ALJ explained that "Dr. Chatroux described the motor vehicle accident as having involved a head-on collision based on the claimant's reports; however, the emergency room report of February 5, 2005, immediately following the accident reflects that the driver at fault had come from behind her and eventually hit the right front corner panel of her car . . . ." Id. (internal quotations omitted). The record, however, shows that the February 5, 2005, motor vehicle accident involved "another vehicle [which came] from [Plaintiff's] left and tr[ied] to turn a corner in front of her. . . . hit[ting] the right front corner panel of her car  . . . ." R. at 1402. Based on the record, Plaintiff's recount of the accident could very well have involved a head-on collision. The ALJ's reasoning here is not supported by substantial evidence.

The Commissioner further asserts that Plaintiff's credibility was undermined by her inconsistent statements to various physicians. Here, the ALJ found Plaintiff was not credible

because she "blamed" her arm, neck, and face pain on an automobile vehicle accident rather than ankylosing spondylitis during her visit with Dr. Goodwin.  See R. at 1069, 1677.  The ALJ also found Plaintiff was not credible because although Plaintiff had ubiquitously complained of pain in her knees, she told emergency room personnel on October 16, 2003, that she "never had knee problems before," which according to the ALJ "reflected that [Plaintiff] withheld information about her prior knee complaints because she was contemplating personal injury litigation arising from the motor vehicle accident."  R. at 1057.

When viewing the record in its entirety, however, it is clear that Plaintiff's "complaints of pain in her knees and every other joint in her body to multiple medical providers" is consistent with Plaintiff's diagnosis of fibromyalgia, not a knee problem which she concealed for the purpose of a personal injury lawsuit.  In addition, Plaintiff could reasonably be expected to experience pain in her arms, neck, and face from an automobile accident in addition to experiencing neck pain from ankylosing spondylitis.  Indeed, Dr. Goodwin opined that Plaintiff's "various and sundry pain disorders . . . can probably be attributed to one or the other of the [motor vehicle accidents], and some [of] them may be old but exacerbated by one or more of these accidents."  R. at 1673 (emphasis in original).

Finally, the ALJ found Plaintiff was not credible because she stated on October 23, 2002, that she was "'unable to carry on normal daily activities,' [but] advised her JCMH counselor three days later that she 'had gotten a job and could no longer attend group [therapy].'"  R. at 1054.  Although the record shows that Plaintiff had "gotten a job" working "two to three hours a day as a special needs tutor,"  R. at 988, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."

13 - OPINION AND ORDER

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). Additionally, the ALJ failed to state the aspects of the job suggesting Plaintiff was unable to carry on normal daily activities. For example, he failed to discuss the nature, frequency, or duration of the work, and failed to relate that work in any way to Plaintiff's claimed limitations. "Only if the level of activity were inconsistent with [c]laimant's claimed limitations would those activities have any bearing on [c]laimant's credibility." Reddick, 157 F.3d at 722. "An ALJ may not chastise a claimant for attempting to work in spite of her impairments; such activity supports, rather than detracts, from the claimant's credibility." McCorduck v. Astrue, Civ. No. 08-6022-CL, 2009 WL 783354, at *5 (D. Or. 2009) (citation omitted).

In sum, I find that the ALJ's reasons for discrediting Plaintiff's testimony are not clear and convincing or supported by substantial evidence. In fact, no doctor in the record questioned Plaintiff's credibility or found her to be malingering. To the contrary, Plaintiff's long time treating physician, Dr. Chatroux, found the exact opposite: that Plaintiff "is an earnest person who would enjoy working full time if her body would have afforded her that luxury." R. at 1370.

**IV. The Opinions of Plaintiff's Physicians**

Plaintiff argues that the ALJ improperly rejected the opinions of several doctors. To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. E.g., Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. Id. Also, when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and

inadequately supported by clinical findings. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

**A. Dr. Sylvia Chatroux, M.D.**

Plaintiff argues that the ALJ improperly rejected the opinions of Dr. Chatroux. Dr. Chatroux is a family practitioner who has treated Plaintiff for approximately fifteen years. See Pl.'s Opening Br., p. 28. Here, the ALJ concluded that "Dr. Chatroux's opinions of September 17, 2006, [were] not . . . entitled to any significant evidentiary weight as they [were] not supported by the generally stable objective findings . . . and [were] undermined by the extent of her reliance upon the claimant's subjective complaints." R. at 1075. As discussed above, the ALJ's adverse credibility finding was erroneous. Accordingly, his reasons for discounting Dr. Chatroux's opinions is neither clear and convincing nor supported by substantial evidence.

The Commissioner asserts that Dr. Chatroux's opinions were entitled to little evidentiary weight because her diagnosis of Plaintiff's ankylosing spondylitis was not supported by objective medical evidence. Here, the record shows that Dr. Chatroux wrote a letter dated February 23, 2004, to the ALJ opining as follows:

> As far as the Ankylosing Spondylitis . . ., [Plaintiff] has seen Dr. Walter Carlini who is a local Neurologist. This Neurologist in particular has a good knowledge of Ankylosing Spondylitis and in fact wrote a chapter for a textbook about the subject. He confirmed that her symptoms were related to the Ankylosing Spondylitis. On March 12, 2002, Dr. Carlini sent me the report which included that [Plaintiff's] main problem is really the Ankylosing Spondylitis. . . . In 2/25/2002, [Plaintiff] had a repeat MRI of the C-spine. At that point the radiologist stated that . . . "since the prior study there has been slight progression of the spondylitis."

R. at 839.

Dr. Carlini's March 12, 2002, medical notes confirm that an MRI of Plaintiff's spine was performed on February 25, 2002. R. at 419. The MRI showed, in the words of Dr. Carlini,

15 - OPINION AND ORDER

"some mild degenerative disk spondylitis from C4 through 6-7." Id.  Based on the laboratory

study, Dr. Carlini diagnosed Plaintiff with ankylosing spondylitis, and documented that he

believed "the bulk of [Plaintiff's] significant problems [were] related directly to her ankylosing

spondylitis." Id.  Thus, contrary to the ALJ's finding, Dr. Chatroux's opinion is supported by

objective medical evidence.

The Commissioner also asserts that the ALJ properly rejected Dr. Chatroux's opinion

because she provided diagnoses contradicting her own treatment notes.  "[A]n ALJ may reject a

physician opinion that contradicts the doctor's own treatment record." Koch v. Astrue, No. CV.

08-609 PK, 2009 WL 1743680, at *7 (D. Or. 2009) (citing Bayliss v. Barnhart, 427 F.3d 1211,

1216 (9th Cir. 2005)).  Here, the ALJ found that Dr. Chatroux's September 17, 2006, opinion

regarding Plaintiff's "chronic pain attributed to ankylosing spondylitis and fibromyalgia and a

history of depression" was inconsistent with her own treatment notes, which "reflect[ed] that she

had reported numerous observations of improved depression, stable fibromyalgia, and improved

musculoskeletal symptoms secondary to treatment from her rheumatologist." See R. at 1075.

That Dr. Chatroux noted some improvement in Plaintiff's condition does not amount to a conflict

in her treatment notes.  See Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1200-01 (9th Cir.

2008) (doctor's observation that plaintiff's condition was "improving" was insufficient to

undermine the repeated diagnosis of those conditions or the doctor's more detailed report).

Finally, the Commissioner argues that Dr. Chatroux's opinions are entitled to less weight

because she appeared to be acting as an advocate for Plaintiff's disability case.  R. at 1052.  The

Commissioner relies on Dr. Chatroux's statement that "Dr. Dryland has really hurt [Plaintiff's]

disability case" and her offer to "write a letter to [Plaintiff's] lawyer in support of her disability

16 - OPINION AND ORDER

claim." R. at 1052.  At most, the record reveals that Dr. Chatroux simply disagreed with Dr.

Dryland's diagnosis.  Moreover, as discussed in more detail below, Dr. Dryland later changed his

opinion and agreed that Plaintiff suffers from ankylosing spondylitis.  See R. at 424.        In sum,

I find the ALJ's reasons for discounting Dr. Chatroux's opinions are not clear and convincing or

supported by substantial evidence.

**B. Dr. David Dryland, M.D.**

Plaintiff argues the ALJ improperly rejected Dr. Dryland's decisions for the same reasons

that he rejected Dr. Chatroux's opinions.  The Commissioner contends that Dr. Dryland's

opinions are unsupported by any clinical findings and were based on Plaintiff's subjective

complaints.

The ALJ erroneously found that Plaintiff was not credible, and therefore the ALJ

improperly rejected Dr. Dryland's opinion for that reason.  Furthermore, contrary to the ALJ's

assertion, I find that Dr. Dryland's opinions are based on clinical findings.

Here, the ALJ found that Dr. Dryland's opinions in his March 3, 2005, letter "was not

supported by the record or entitled to any significant evidentiary weight." R. at 1082.  Dr.

Dryland's March 3, 2005, letter states in relevant part:

> [Plaintiff] is suffering from Psoriatic arthritis, fibromyalgia, and the residual effects
> of motor vehicle accidents with serious trauma.  All this leaves her unable to work.
> Her inflammatory arthritis dates back to at least 2000.  She is greatly limited by pain,
> fatigue, and stiffness.  She is unable to lift, sit, stand, bend or use her extremities on
> any consistent basis and is not expected to improve. . . . this makes regular
> employment impossible.

R. at 1436.

Dr. Dryland is a rheumatologist who has treated Plaintiff for over three years from

November 13, 2001, to May 10, 2005.  See R. at 439, 1431.  A review of the record shows that

17 - OPINION AND ORDER

Dr. Dryland has performed physical examinations, laboratory testing, CT scans, and x-rays of

Plaintiff.  R. at 422, 424, 433, 1441-42, 1444-45, 1448, 1451, 1462.  On November 13, 2001, Dr.

Dryland ordered a laboratory test of Plaintiff, the results of which showed the presence of the

HLA-B27 antigen.  See R. at 437.  It was noted that the "HLA-B27 antigen is present in 9 percent

of Caucasian and 4 percent of black populations.  The antigen is seen with a frequency of 90

percent in patients with ankylosing spondylitis . . . ."  Id.

On November 21, 2001, Dr. Dryland "[r]ule[d] out ankylosing spondylitis."  R. at 433.

On May 25, 2004, however, Dr. Dryland conducted a physical examination of Plaintiff, including

a musculoskeletal examination.  See R. at 1451.  He opined Plaintiff had "possible seronegative

spondyloarthropathy on top of mild fibro."  Id.  He also opined that it was "[l]ess like fibro" and

found it necessary to do an "Enbrel trial."  Id.  On August 13, 2004, Dr. Dryland performed

another musculoskeletal physical examination of Plaintiff and affirmatively diagnosed Plaintiff

as having "seronegative spondyloarthropathy (AS) on top of mild fibro."  R. at 1448.

On November 19, 2004, Dr. Dryland opined Plaintiff "has both [seronegative

spondyloarthropathy (AS) and mild fibro] and reversal with Enbrel prove[d] [it]."  R. at 1444.

On December 9, 2004, Dr. Dryland performed another physical examination, this time finding

"[p]soriatic lesions [on Plaintiff's] hands esp. finger tips."  R. at 1441; see also R. at 1557

(finding "[s]cattered psoriatic lesions [on] hands, esp. finger tips, heels").

The record shows that although Dr. Dryland did not initially diagnose Plaintiff with

ankylosing spondylitis, he later changed his opinion and diagnosed Plaintiff with the disease.

Moreover, his diagnosis of ankylosing spondylitis was based on a number of physical

examinations, the presence of the HLA-B27 antigen, and the effect of Enbrel on Plaintiff's

symptoms.  With respect to the HLA-B27 antigen, the ALJ found:

> [T]he HLA-B27 antigen is present in nine percent of the Caucasian population and
> is seen with a frequency of 90 percent in individuals with "clinical confirmation" of
> ankylosing spondylitis. . . . Thus, there are individuals with ankylosing spondylitis
> who do not test positive for the HLA-B27 antigen and there are individuals who test
> positive for the antigen, but who do not have clinical confirmation of ankylosing
> spondylitis.

R. at 1035.

The ALJ appears to assert that Plaintiff falls within the 10% of patients who have the

HLA-B27 antigen, but do not have ankylosing spondylitis.  He, however, does not cite any

evidence supporting his finding, and I find nothing in the record supporting his position.

Regarding Plaintiff's psoriatic arthritis diagnosis, the ALJ recognized Dr. Dryland's clinical

observation of psoriatic lesions, but found they were "superficial psoriatic lesions."  R. at 1035.

However, there is nothing in the record indicating that the psoriatic lesions on Plaintiff's hands

are "superficial."

In sum, I find that the reasons on which the ALJ relied when discounting Dr. Dryland's

opinions are not based on substantial evidence.

**C. Dr. Edwin E. Pearson, Ph.D.**

Plaintiff argues that the ALJ improperly rejected Dr. Pearson's opinion.  Dr. Pearson is a

licensed psychologist who examined Plaintiff on May 16, 2007.  R. at 1697.  He opined, among

other things, that Plaintiff would "have severe problems with concentration, attention and

persistence due to fluctuating and unpredictable levels of pain, chronic fatigue and depression."

Id.  The ALJ concluded that Dr. Pearson's opinion was not entitled to significant evidentiary

weight because it was based on Plaintiff's "subjective allegations . . . and [was] contradicted by

19 - OPINION AND ORDER

his reported observations regarding her inconsistencies and by substantial evidence of record documenting longstanding exaggeration in pursuit of secondary gain." R. at 1079.  As discussed above, the ALJ's adverse credibility findings were erroneous, and therefore, his reasons for rejecting Dr. Pearson's opinions on that basis was not supported by substantial evidence.

### D. Dr. Peter Grant, M.D.

Plaintiff contends the ALJ improperly rejected the opinions of Dr. Grant.  Dr. Grant opined in a Physical Residual Function Capacity Report dated June 7, 2001, that Plaintiff was limited to occasional reaching, handling, and fingering.  R. at 352.  He also opined that Plaintiff was limited to standing and/or walking "at least 2 hours in an 8-hour workday."  Id.  The ALJ concluded that Dr. Grant's opinion was not "entitled to significant evidentiary weight" primarily because "his opinions regarding the claimant's capacities for standing, walking, handling, and fingering . . . [were] inconsistent with and outweighed by the clinical observations of Dr. Ahsan, a treating source, and Dr. Webb, a treating source with expertise in the field of orthopedic surgery." R. at 1045.  As noted above, Dr. Ahsan and Dr. Webb's medical opinions are not in the record.  At the very least, the ALJ's decision is not supported by substantial evidence.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

## V. The ALJ's Step Three Findings

Plaintiff asserts that the ALJ committed reversible error by failing to consider whether all of Plaintiff's severe and non-severe impairments equalled Listing 14.09.  The Commissioner argues that the ALJ did not determine Plaintiff's ankylosing spondylitis was a severe impairment, and therefore the ALJ was not required to consider ankylosing spondylitis under Listing 14.09.

Here, the ALJ found that "it [was] sufficient for the purpose of the second step of the sequential evaluation process to note that possible mild ankylosing spondylitis . . . constitute[d] a 'severe' impairment for the purpose of this adjudication . . . ." R. at 1035. He also stated in a separate portion of his opinion that Plaintiff's "ankylosing spondylitis has been acknowledged as a severe impairment for the purpose of this adjudication." R. at 1068. Contrary to the Commissioner's assertion, the ALJ found Plaintiff's ankylosing spondylitis was a severe impairment.

Despite his finding, the ALJ evaluated Plaintiff's "ankylosing spondylitis . . . under the general provisions of section 1.00 of Appendix 1." R. at 1036. Listing 1.00 addresses disorders of the musculoskeletal system. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00. Ankylosing spondylitis, however, is classified as an inflammatory arthritis disorder pursuant to Listing 14.09, not Listing 1.00. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.00B6. Because the ALJ failed to analyze Plaintiff's ankylosing spondylitis under the proper listing, his findings at step three are not supported by substantial evidence and are based upon legal error. On this basis alone, I find that remand is warranted. See, e.g., Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

## VI. Remand

The decision whether to remand for further proceedings or for an immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. Blaylock v. Astrue, No. 10–CV–6089–BR, 2011 WL 2174032, at *6 (D. Or. 2011). A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or

21 - OPINION AND ORDER

when the record has been fully developed and the evidence is insufficient to support the

Commissioner's decision.  Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate

award of benefits directed where "'(1) the ALJ has failed to provide legally sufficient reasons for

rejecting such evidence, (2) there are no outstanding issues that must be resolved before a

determination of disability can be made, and (3) it is clear from the record that the ALJ would be

required to find the claimant disabled were such evidence credited.'"  Harman, 211 F.3d at 1178

(citation omitted).  "The second and third prongs of the test often merge into a single question:

Whether the ALJ would have to award benefits if the case were remanded for further

proceedings."  Blaylock v. Astrue, No. 10–CV–6089–BR, 2011 WL 2174032, at *6 (D. Or.

2011).  The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves

the court flexibility in determining whether to enter an award of benefits upon reversing the

Commissioner's decision.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (citation

omitted).

Exercising my discretion, I find that under the "crediting as true" doctrine, a remand for

an award of benefits is warranted.  With respect to the first prong, the ALJ failed to provide

legally sufficient reasons for rejecting the opinions of Drs. Chatroux, Dryland, Pearson, and

Grant, as well as Plaintiff's statements and testimony.  With respect to the second and third

prongs, the ALJ would have to award benefits if this matter were remanded for further

proceedings because Plaintiff meets the requirements of Listing 14.09D.

Pursuant to Listing 14.09D, a claimant will be found disabled if he shows:

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
1. Limitation of activities of daily living.
2. Limitation in maintaining social functioning.
3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Here, the ALJ found Plaintiff's ankylosing spondylitis, a disorder associated with inflammatory arthritis, to be a severe impairment. R. at 1035. Furthermore, all the evidence before me, including the improperly rejected evidence of Plaintiff's own statements and those of her doctors, supports a finding that Plaintiff has at least two of the constitutional symptoms or signs. For example, Christian Duren, a certified physician's assistant to Dr. Theen, consistently assessed Plaintiff with fatigue and malaise.[1] See R. at 1652, 1658, 1662. In addition, Dr. Dryland opined that Plaintiff "is greatly limited by . . . fatigue[,]" R. at 1436, and Plaintiff herself has repeatedly complained about fatigue. R. at 1212. Finally, the record supports a finding that Plaintiff's "[l]imitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace" is marked. For example, Dr. Pearson opined that Plaintiff would "have severe problems with concentration, attention and persistence due to fluctuating and unpredictable levels of pain, chronic fatigue and depression[,]" R. at 1697, and opined that Plaintiff's "attention, concentration, and persistence [were] [a]ll significantly diminished due to pain, fatigue and depression." R. at 1700.

---

[1] The opinion of a physician's assistant "working in conjunction with a physician in a team healthcare environment may be construed as part of the leading physician's opinion." See Higgins v. Astrue, Civil No. 10–193–KI, 2011 WL 2135472, at *6 (D. Or. 2011) (citing Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996)).

In sum, the record supports a finding that Plaintiff's severe and non-severe impairments equal Listing 14.09. On this basis alone, I find a remand for an award of benefits is proper.

I also find a remand for an award of benefits proper for an additional reason: the Ninth Circuit looks with disfavor on an ALJ's "heads we win, tails, let's play again" approach to disability adjudications as is the case here. See Benecke, 379 F.3d at 585 (citation omitted). The Ninth Circuit has recognized that "[r]emanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" Id. (citation omitted). The Ninth Circuit's concerns are particularly applicable here where this matter has dragged on for over ten years, has already been remanded for further proceedings, and must now be remanded again because of the ALJ's legal errors. In the exercise of my discretion, I find that under these circumstances remand for the immediate calculation and award of benefits is proper.

## CONCLUSION

Based on the above, this court REVERSES the decision of the Commissioner and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

Dated this 1st day of July, 2011.

/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

24 - OPINION AND ORDER